IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MICHAEL ALFRED MAESTREY,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　　　　　　　　: CASE NO. 5:17-CV-00068-MTT-MSH
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
Warden GLEN JOHNSON, *et al.*,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　　　　　:

## ORDER

Pending before the Court is Defendants' motion for summary judgment (ECF No. 91) and Plaintiff's motions for summary judgment and default judgment (ECF Nos. 87, 94). For the reasons explained below, Defendants' motion judgment (ECF No. 91) is **GRANTED**, and Plaintiff's motions (ECF Nos. 87, 94) are **DENIED**.

## PROCEDURAL BACKGROUND

On February 2, 2017, Plaintiff filed a complaint (ECF No. 1) under 42 U.S.C § 1983 against Defendant Johnson, Warden of Dooly State Prison ("DSP"), and Defendant Bryson, former Commissioner of the Georgia Department of Corrections ("GDC").[1] On August 14, 2017, Plaintiff filed a recast complaint (ECF No. 12), adding Defendant Dozier—who, at the time of filing, was Commissioner of GDC—and asserting a violation of his rights under the First Amendment Free Exercise Clause and the Religious Land

---

[1] "Under the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (citation and internal quotation marks omitted). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *Id.*

Use and Institutionalized Persons Act ("RLUIPA").[2] After a preliminary review of Plaintiff's recast complaint, these claims were allowed to proceed for further factual development. Order 2, Nov. 19, 2018, ECF No. 36. On July 26, 2019, the Court denied Defendants' motion to dismiss (ECF No. 32) these claims, but limited Plaintiff's possible monetary recovery to nominal damages for his First Amendment free-exercise claim. Order 1-2, ECF No. 65. It also dismissed his claim for injunctive relief except as to Dozier.[3] *Id.* at 2. Defendants answered (ECF No. 80) on August 9, 2019. The Court received Plaintiff's motion for summary judgment (ECF No. 87) on November 8, 2019, and his motion for default judgment (ECF No. 94) on December 30, 2019. Defendants moved for summary judgment (ECF No. 91) on December 30, 2019. The Court notified Plaintiff of Defendants' motion for summary judgment and informed him that he must file a response within thirty days. Order 3, Dec. 30, 2019, ECF No. 92. Plaintiff failed to respond. These motions are ripe for review.

## DISCUSSION

**I.    Defendants' Motion for Summary Judgment**

Defendants move for summary judgment, contending: 1) Plaintiff cannot show a First Amendment or RLUIPA violation, 2) Defendants cannot be held liable in their

---

[2] Plaintiff originally asserted other claims, but only his First Amendment free-exercise and RLUIPA claims remain pending.

[3] Defendants indicate Dozier has been replaced as Commissioner of GDC by Timothy Ward, and that—under Rule 25(d) of the Federal Rules of Civil Procedure—he should be automatically substituted as Defendant with respect to the First Amendment free-exercise and RLUIPA claims for injunctive relief. Defs.' Mot. for Summ. J. 1 n.1, ECF No. 91. The Court agrees and **DIRECTS** the Clerk to add Timothy Ward, in his official capacity, as a defendant in this action.

supervisory capacities, and 3) Defendants are entitled to qualified immunity.[4] Defs.' Br. in Supp. of Mot. for Summ. J. 5-15, ECF No. 91-1. Because Plaintiff fails to show a First Amendment or RLUIPA violation, the Court agrees that Defendants are entitled to summary judgment. As alternative and additional grounds, the Court finds Plaintiff has failed to establish supervisory liability as to Bryson and Dozier and that Bryson, Dozier, and Johnson are entitled to qualified immunity on Plaintiff's First Amendment free-exercise claim for nominal damages.

A. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

[4] Defendants also move for summary judgment on Plaintiff's claim for injunctive relief, contending his request for all GDC prisons to provide vegan meals is not narrowly drawn or the least intrusive means to correct the violation of a federal right. Defs.' Mot. for Summ J. 15, ECF No. 91. However, assuming this is true, it is not grounds for granting summary judgment. If Plaintiff established a constitutional violation, he would not be foreclosed from injunctive relief. *See Thomas v. Hutcheson*, No. 6:14-cv-16, 2015 WL 4378278, at *15 (S.D. Ga. July 15, 2015) (recommending denial of summary judgment on the grounds that proposed relief was not narrowly tailored or the least intrusive means to correct violation).

3

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. *Id.* at 324–26. This evidence must consist of more than conclusory allegations. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

B.     Plaintiff's Failure to Respond

Plaintiff did not respond to Defendants' motion for summary judgment or their statement of facts despite the Court's notice of his need to do so. Order 1-3, Dec. 30, 2019. The Local Rules of the United States District Court for the Middle District of Georgia (hereinafter "Local Rules") provide:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L. R. 56. The Court, however, "cannot base the entry of summary judgment on

4

the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of a motion for summary judgment, even an unopposed motion, a court must, at least, "review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02. In other words, the court cannot simply accept the facts stated in a moving party's statement of material facts as true, but must also review the movant's citations to the record and confirm that there are no issues of material fact. *Id.* at 1103 n.6.

C. Factual Background

Plaintiff's claims arise from his incarceration at Calhoun State Prison ("CSP") between July 10, 2016, and November 17, 2016, and DSP between November 17, 2016, and November 16, 2017. Movement History 3, ECF No. 91-6. Plaintiff practices Orthodox Christianity, which he describes as following the original version of the King James Bible. Pl.'s Dep. 41:4-17, ECF No. 91-3. Under his belief system, Plaintiff is prohibited from "eat[ing] things containing blood of animals." Recast Compl. 6, ECF No. 12. This includes the internal organs of an animal, such as the liver, along with dairy products and eggs. Pl.'s Dep. 51:22-52:3, 57:8-17. Plaintiff's beliefs also prohibit him from eating pork. *Id.* at 55:17-20. He is, however, allowed to eat the flesh of animals, meaning he can eat beef, chicken, and fish. *Id.* at 52:15-21, 56:19-24, 9:1-3.

While Plaintiff was incarcerated at CSP and DSP, he was, at times, served food prohibited by his religious beliefs without being provided substitutes. *Id.* at 125:2-9. The menus at the two facilities were basically the same with some variations. *Id.* at 105:17-25. Specifically, CSP and DSP served liver once or twice per month at dinner. *Id.* at

5

74:1-7, 118:17-22, 119:22-25. On these occasions, they also served mashed potatoes or rice, along with cookies and greens. Pl.'s Dep. 120:17-21. As Plaintiff's beliefs barred him from eating liver, however, he would ask for a no-liver tray, which did not include a substitute for the liver or doubled portion of rice or other vegetable. *Id.* at 121:6-18, 124:6-125:11. Additionally, when the prison served eggs, Plaintiff did not receive a substitute for the eggs. *Id.* at 123:5-11. Finally, Plaintiff could not drink milk, though he did have access to juice or water. *Id.* at 123:12-24.

GDC offers inmates two means for requesting modification of their diet. First, inmates may submit a special religious request form at their institution. Johnson Decl. ¶¶ 6-12 and Attach. B-2, ECF No. 91-4. Second, inmates may request transfer to one of ten Georgia prisons offering the "Alternative Entrée Program," which provides vegan meals. Pataluna Decl. ¶¶ 10-12, ECF No. 91-5. In 2016 and 2017, GDC had the capacity to serve any inmate requesting the Alternative Entrée menu at one of the ten facilities. *Id.* ¶ 24. Even though he is not a vegan or vegetarian, Plaintiff testified that he completed special religious request forms at CSP and DSP for a vegan tray, but they were ignored. Pl.'s Dep. 53:3-10, 130: 10-20, 152:9-10. He did not request a transfer to a facility offering a vegan tray because he feared for his safety due to threats from gang members and because the only facility he knew that offered the vegan option—Valdosta State Prison—is a close-security prison; Plaintiff is a medium-security inmate. *Id.* at 145:13-147:13. He did not ask to be transferred to a medium-security facility offering vegan options, though he did ask if there were other facilities, and a CSP deputy warden told him that he did not know. *Id.* at 147:17-148:3.

### D. First Amendment and RLUIPA Claims

*1. Legal Standards*

The First Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "To establish a violation of his [or her] right to free exercise, [a plaintiff] must first establish that a state actor imposed a 'substantial burden' on his practice of religion." *Wilkinson v. GEO Grp., Inc.*, 617 F. App'x 915, 917 (11th Cir. 2015) (per curiam) (citing *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1549 (11th Cir.1993)). The prisoner's beliefs must be sincere, meaning they are "truly held and are religious in nature." *Williams v. Sec'y for Dep't. of Corr.*, 131 F. App'x 682, 685 (11th Cir. 2005) (per curiam). Prison officials may limit a prisoner's free exercise of sincerely held religious beliefs if such "limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (per curiam) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

RLUIPA requires the government to justify any substantial burden on a prisoner's religious exercise by demonstrating a compelling governmental interest. *See Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007*), abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). "To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." *Smith v. Governor for Ala.*, 562 F. App'x 806, 813 (11th Cir. 2014) (per curiam) (citation and internal quotation marks omitted). Once a Plaintiff makes such a showing, "the burden then shifts to the defendant

7

to prove the challenged regulation is the least restrictive means of furthering a compelling governmental interest." *Smith v. Owens*, 848 F.3d 975, 979 (11th Cir. 2017)

### 2. *Plaintiff's Religious Exercise Was Not Substantially Burdened*

Defendants do not dispute—for purposes of their motion—that Plaintiff's religious beliefs are sincere. Defs.' Br. in Supp. of Mot. for Summ. J. 7. They also do not ask the Court to decide whether prison policies were reasonably related to a legitimate penological interest or the least restrictive means of furthering a compelling state interest. *Id.* Instead, Defendants contend that Plaintiff's religious rights were not substantially burdened. *Id.*

The Eleventh Circuit has "applied similar definitions of 'substantial burden' when assessing claims under both RLUIPA and the Free Exercise Clause." *Robbins v. Robertson*, 782 F. App'x 794, 802 n.5 (11th Cir. 2019) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir. 2004)). "[A]n individual's exercise of religion is 'substantially burdened' if a regulation completely prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion." *Midrash*, 366 F.3d at 1227. It means "more than an inconvenience on religious exercise" but instead is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Id.* Under this definition, the Court concludes that Plaintiff's religious exercise has not been substantially burdened.

Plaintiff is not a vegetarian or vegan, and there are relatively few foods served by GDC that he cannot eat. He does not eat pork, but GDC has not served pork since 2008. Pataluna Decl. ¶ 14. All of the meats served at GDC facilities consist of chicken, beef,

turkey, or fish, none of which are prohibited by Plaintiff's beliefs.[5]  *Id.*  ¶ 15; Pl.'s Dep. 52:20-21, 56:19-24, 90:1-3.  Liver is the only meat GDC serves which Plaintiff cannot eat, and while it was previously served twice per month, now it is only served once per month.  Pl.'s Dep. 74:2-7.  Plaintiff also cannot eat eggs, but his deposition testimony was inconsistent as to how often they were served.  At one point, he said four to five days per week, but in response to specific questions, he only identified three days per week.  *Id.* at 76:7-13, 91:16-17, 91:19-92:3, 99:8-9.  The GDC menu for 2016 and 2017 indicates prisons served eggs two to three times per week, along with other items.  Pataluna Decl. Attach. C-1.  In addition, Plaintiff can eat the grits or biscuit served with the eggs.  Pl.'s Dep. 76:19-77:16.  Moreover, instead of milk, Plaintiff has the option of drinking water or juice, though he does not "mess with" the juice because he does not know what it contains.  *Id.* at 94:2-8, 123:12-23.

Also, the burden on Plaintiff's religious exercise was lessened for at least a portion of his confinement because he made a "lot of money" and did not rely on the prison chow hall for food.  *Id.* at 101:18-102:4; *see Benning v. Georgia*, 845 F. Supp. 2d 1372, 1380-81 (M.D. Ga. 2012) (concluding that requiring inmate to purchase a depilatory from inmate commissary did not substantially burden his religious exercise).  Further, Plaintiff received

---

[5] Plaintiff contends a meat shank served by GDC contained liver.  Pl.'s Dep. 106:24-107:8, 120:3-16, ECF No. 91-3.  He offers nothing to support this assertion, however, beyond statements by unidentified kitchen workers.  *Id.*  This is inadmissible hearsay—not reducible to admissible form at trial—which the Court cannot consider when ruling on a motion for summary judgment. *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (finding statements of unknown co-workers to be inadmissible hearsay); *Funderburk v. Fannie Mae*, No. 1:13-CV-01362-LMM, 2015 WL 11216690, at *3-5 (N.D. Ga. Nov. 16, 2015) (finding statement by unidentified employee of defendants to be inadmissible hearsay where plaintiff failed to lay proper foundation for admission of evidence).

9

a diabetic food tray which provided him additional food. *Id.* at 111:14-24, 114:6-115:11, 115: 23-25, 116:3-24, 117:20-118:12. Hence, while Plaintiff alleges that the lack of substitute items for the liver and dairy products reduced his caloric intake and nutrition, he fails to present evidence that this minor inconvenience had any appreciable impact on his overall nutritional health. *See Pennick v. DeHaven*, No. 3:18-cv-05434-BHS-DWS, 2019 WL 5085871, at *4 (W.D. Wash. July 25, 2019) ("The denial of two to four eggs per week while receiving a minimum of 2,700 calories per day does not demonstrate Plaintiff was forced to choose between [an] adequately nutritious diet and one which comports with his religious beliefs."). Finally, Plaintiff did not request a transfer to one of ten prisons that offer vegan meals.[6] According to Johnson, "almost all inmates" at DSP who requested the Alternative Entrée Program were transferred. Johnson Decl. ¶ 14. Under these circumstances, Plaintiff fails to show his religious exercise was substantially burdened, and Defendants are entitled to summary judgment.

E. Supervisory Liability

In the alternative, Bryson and Dozier are entitled to summary judgment because

---

[6] Plaintiff testified that he did not request a transfer to Valdosta State Prison, which serves vegan meals, for fear of his safety and because it is a close-security prison. Pl.'s Dep. 147:6-20. Plaintiff's contention that transfer to a prison serving vegan meals would endanger his safety is speculative. Moreover, he recently asserted that even if there are medium security prisons offering vegan meals, there is "no penological interest in offering some offenders restricted vegan entrees at certain [GDC] facilities while at the same time denying some offenders (such as Plaintiff) restricted vegan entrees at certain other facilities." Pl.'s Mot. for Summ. J. 4, ECF No. 87. However, vegan trays are limited to certain prisons because they require separate kitchens for preparation. Pataluna Decl. ¶ 11, ECF No. 91-5. While Plaintiff has a right to food consistent with his religious beliefs, he is not entitled to dictate the particular prison at which he is served.

Plaintiff fails to establish supervisory liability.[7]  "Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019).  Instead, a Plaintiff must show that the supervisor personally participated in the alleged unconstitutional conduct or that there is a causal connection between a supervisor's actions and the alleged constitutional violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Such showing may be established when: 1) there is "a history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged [violation], and he fails to do so," 2) a "supervisor's custom or policy results in deliberate indifference to constitutional rights," or 3) "facts support an inference that the supervisor directed the subordinates to act unlawfully" or  knew they "would act unlawfully and failed to stop them from doing so." *Id.*

Plaintiff has not presented evidence that Bryson and Dozier personally participated in the alleged constitutional violation or that there was a causal connection between their actions and the violation.  At his deposition, Plaintiff testified his claims against them are based on their position as current and former Commissioners of GDC and their institution of policies that violated his rights.  Pl.'s Dep. 161:6-14.  Plaintiff, however, has not identified policies that violate his rights.  Instead, the evidence shows GDC has policies allowing inmates to obtain vegan meals—the Alternative Entrée Program and the special

---

[7] Defendants mention Ward in their argument on supervisory liability.  Defs' Br. in Supp. of Mot. for Summ J. 11, ECF No. 91-1.  Because he is only a defendant in his official capacity as to Plaintiff's claims for prospective injunctive relief, however, he is not entitled to summary judgment on this ground.  *See Quintanilla v. Bryson*, 730 F. App'x 738, 748 (11th Cir. 2018) (citing *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (per curiam) (reversing district court dismissal of claim against Commissioner of GDC in his official capacity).

religious accommodation request. Pataluna ¶¶ 22-23. Plaintiff did not request a transfer to a prison offering the Alternative Entrée menu, and he alleges his requests for special religious accommodation at CSP and DSP were ignored. Pl.'s Dep. 147:6-13, 148:20-152:10. However, he has not shown that his failure to obtain an accommodation resulted from a widespread abuse in response to such requests or that Bryson and Dozier directed CSP and DSP officials to act unlawfully—or even knew they did so. Therefore, they are entitled to summary judgment on this additional ground.[8]

F. Qualified Immunity

Additionally, Bryson, Johnson, and Dozier are entitled to qualified immunity on Plaintiff's First Amendment free-exercise claim for nominal monetary damages.[9] "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009). A defendant seeking qualified immunity must show that at the time of the alleged wrongful acts, "he was acting within the scope of his discretionary authority." *Id.* at 905. Once this is established, "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." *Id.* To do so, a plaintiff must "demonstrate: first, that the facts when viewed in a light most favorable to

---

[8] Johnson is not entitled to summary judgment on this ground. Although Plaintiff testified that he named him as a defendant because he was the Warden and "head honcho," Plaintiff also stated he spoke with Johnson who told him to just not eat. Pl.'s Dep. 154:12-157:3. Therefore, he has presented evidence Johnson personally participated in the alleged constitutional violation.

[9] Ward is not entitled to qualified immunity on Plaintiff's claims against him for injunctive relief because qualified immunity is only a defense against personal liability for monetary damages. *Ratliff v. DeKalb Cty., Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995).

the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* (internal quotation marks omitted).

There is no dispute that Defendants were acting within the scope of their discretionary authority. Moreover, even assuming Plaintiff has established a constitutional violation, he has not shown that such right was clearly established. In 2016 and 2017, "as a general matter, a reasonable government official would have known" that Plaintiff had a "right to a diet consistent with [his] sincere religious beliefs." *Watkins v. Haynes*, No. CV 212-050, 2013 WL 1289312, at *13 (S.D. Ga. Mar. 27, 2013). However, "[t]he inquiry into whether a right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, the issue is whether, in 2016 and 2017, an inmate—with relatively modest dietary restrictions—had a clearly established right to substitute menu items on the days when prohibited food was served with other, non-prohibited food. The Court can find no case directly on point, and established law at the time indicated that a substantial burden must constitute "more than an inconvenience on religious exercise." *Midrash*, 366 F.3d, at 1227. Thus, Bryson, Dozier, and Johnson could have reasonably believed— considering Plaintiff's modest dietary restrictions—that CSP and DSP's menu options were lawful. Therefore, they are entitled to qualified immunity.

## II. Plaintiff's Motions

### A. Motion for Summary Judgment

Plaintiff has also moved for summary judgment (ECF No. 87). This motion is denied for three reasons. First, the Court concludes that no genuine issue of material fact remains and that Defendants are entitled to judgment as a matter of law. Second, even if the Court denied Defendants' summary judgment motion, there would at least be a genuine dispute of material fact as to whether Plaintiff's exercise of religion was substantially burdened. Third, Plaintiff failed to comply with the Local Rules' requirement that movants attach a "separate and concise" statement of material facts—separately numbered with specific citations to the record—to which he "contends there is no genuine dispute to be tried."[10] M.D. Ga. L. R. 56. Although courts liberally construe *pro se* pleadings, *pro se* litigants are not excused from procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

### B. Motion for Default Judgment

Plaintiff moves for default judgment on the ground that Defendants' response to his motion for summary judgment was untimely. Pl.'s Mot. for Default J. 1-5, ECF No.

---

[10] This is not a minor omission, as such rules are "designed to help the court identify and organize the issues in the case." *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (noting plaintiff's failure to properly respond to defendants' statement of material facts was "not a mere technicality"); *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (observing that the local rule "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge" (internal quotation marks omitted)). By failing to comply with this rule, Plaintiff has left this Court to guess as to which particular facts in the record he contends there is no dispute. Plaintiff's "reiteration of his claims" and "summary conclusions" are insufficient to support a motion for summary judgment. *Trainer v. Jones*, No. 1:04-CV-180-WLS, 2009 WL 901490, at *2 (M.D. Ga. Mar. 31, 2009).

94. There is no dispute that Defendants failed to timely respond to Plaintiff's motion. However, the Court has discretion to consider an untimely response and to extend the time to respond to motions even after the time has expired. *See Arnold v. Bunn*, No. 1:03-CV-0087-CAP, 2013 WL 12099356, at *8 (N.D. Ga. Mar. 29, 2013) (citing Fed. R. Civ. P. 6(b)(1)). The Court did so in this case. Text-only Order, Dec. 9, 2019, ECF No. 89.

Additionally, even if Defendants had failed to respond entirely, Plaintiff would not be entitled to summary judgment on this ground. *Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004) (per curiam) (stating summary judgment "cannot be granted as a sanction for merely failing" to respond to a motion for summary judgment). The Court must still consider the merits of the motion. *Id.* at 1039. The Court has considered the merits of Plaintiff's motion for summary judgment and denied it. This motion is denied as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 91) is **GRANTED** and Plaintiff's motions for summary judgment and default judgment (ECF Nos. 87, 94) are **DENIED**.

**SO ORDERED**, this 13th day of February, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT